IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NICASIO CUEVAS QUILES, III;
SCOTT ANDRASTEK;
CARLOS ABADIA;
RAYMOND CODY;
TERENCE BREWER;
STEVEN JILES;
ANTHONY STENSON;
THOMAS HILL;
CHARLES E. HENNINGS;
SEAN HATCH;

    *et.al.;*

    Plaintiff[s],

**CIVIL RIGHTS COMPLAINT**
**TRIAL BY JURY DEMANDED**
**CASE NO. _____**

    v.

TIM HAINES, WARDEN;
KEVIN SEMANKO, DEPUTY WARDEN;
RUSSELL BAUSCH, SECURITY DIRECTOR;
LISA PETTERA, PROGRAM DIRECTOR/A.D.A. COORDINATOR;
JOHN DOE I, CAPTAIN/SUPERVISOR;
JOHN DOE II, CORRECTIONAL OFFICER;
JOHN DOE III, CORRECTIONAL OFFICER;
MS. KRACHEY, UNIT MANAGER;
MS. BARTELS, HEALTH SERVICES UNIT MANAGER;
MS. JAIME SALINAS, HEALTH SERVICES NURSE;
JOHN DOE IV, HEALTH SERVICES DOCTOR/PRACTITIONER;
EACH SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;

    Defendant[s]

---

**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

---

I. JURISDICTION AND VENUE

1.     This is a civil action authorized by 42 U.S.C. Section 1983 to redress deprivation, under color of state law, of rights secured by the Constitution of the United States.

The court has jurisdiction under 28 Section 1331 and 1343(a)(3). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. The court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. Section 1367.

2. The Western District Court is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PARTIES

### PLAINTIFFS:

3. Plaintiff, Nicasio Cuevas Quiles, III, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

4. Plaintiff, Scott Andrastek, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

5. Plaintiff, Carlos Abadia, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

6. Plaintiff, Raymond Cody, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

7. Plaintiff, Terence Brewer, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

8. Plaintiff, Steven Jiles, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

9. Plaintiff, Anthony Stenson, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of

Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

10. Plaintiff, Thomas Hill, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

11. Plaintiff, Charles Hennings, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

12. Plaintiff, Sean Hatch, is and was at all times mentioned herein as a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Prairie Du Chien Correctional Institution, in Prairie Du Chien, Wisconsin.

### DEFENDANTS:

13. Defendant, Tim Haines, is the former Warden of Prairie Du Chien Correctional Institution for the state of Wisconsin Department of Corrections. At the time of the allegations and incidents contained within the complaint, he was legally responsible for the overall operation of all Departments and each institution under its jurisdiction, including Prairie Du Chien Correctional Institution, as well as the welfare of all inmates/offenders in that prison.

14. Defendant, Kevin Semanko, is the Deputy Warden of Prairie Du Chien Correctional Institution for the state of Wisconsin Department of Corrections. He is legally responsible for the overall operation of all Departments and each institution under its jurisdiction, including Prairie Du Chien Correctional Institution, as well as the welfare of all inmates/offenders in that prison.

15. Defendant, Russell Bausch, is the Security Director of Prairie Du Chien Correctional Institution for the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, was legally responsible for the overall security of the correctional facility, as well as the welfare of all inmates/offenders in that prison.

16. Defendant, Lisa Pettera, is the Program Director and ADA Supervisor of Prairie Du Chien Correctional Institution for the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, was legally responsible for all programming and programs offered to all inmates/offenders in that prison.

17. Defendant, John Doe I, is a Correctional Officer of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the

held the rank of Captain and was assigned to Prairie Du Chien Correctional Institution.

18. Defendant, John Doe II, is a Correctional Officer of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the rank of Sergeant and was assigned to Prairie Du Chien Correctional Institution.

19. Defendant, John Doe III, is a Correctional Officer of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the rank of COII and was assigned to Prairie Du Chien Correctional Institution.

20. Defendant, Ms. Krachey, is a Unit Manager of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the position of Unit Manager and was assigned to Prairie Du Chien Correctional Institution.

21. Defendant, Ms. Bartels, is a Health Services Unit Manager of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the position of Unit Manager and was assigned to Prairie Du Chien Correctional Institution.

22. Defendant, Jaime Salinas, is a Health Services Nurse of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the position of Nurse and was assigned to Prairie Du Chien Correctional Institution.

23. Defendant, John Doe IV, is a Health Services Doctor/Practitioner of the state of Wisconsin Department of Corrections who, at all times mentioned in this complaint, held the position of Doctor/Practitioner and was assigned to Prairie Du Chien Correctional Institution.

### III. STATEMENT OF FACTS

24. Plaintiffs Nicasio Cuevas Quiles, III, Scott Andrastek, Carlos Abadia, Raymond Cody, Terence Brewer, Steven Jiles, Anthony Stenson, Thomas Hill, Charles Hennings, and Sean Hatch, offenders currently incarcerated at Prairie Du Chien Correctional Institution (herein referred to as "PDCI"), are filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.

   At the outset, the Plaintiffs seek to have the court note that pleadings and filings performed by *pro se* litigants are held to a less stringent standard than those drafted by an attorney or legal counsel[1]. *See Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Estelle v. Gamble, 429 U.S. 97, 106, 50 L.*

---

[1] *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).*

*Ed. 2d 251, 97 S. Ct. 285 (1976)*. This looser standard requires the court to be especially indulgent in accepting truth of the factual averments of the complaint and to consider every inference helpful to the Plaintiffs' cause[2]. Accordingly, in ruling on these motions, the court is required to look to the allegations of the complaint, and, "…if under any theory they are sufficient to state a cause of action in accordance with the law, [any] motion to dismiss the complaint must be denied."[3]

25. Prairie Du Chien Correctional Institution is a medium security correctional facility located in Prairie Du Chien, Wisconsin. The Plaintiffs allege the continued deprivation and violation of protected constitutional rights by the Defendants by being subjected to standards which are arbitrarily created without just cause, without merit, are absent of any penological interest(s), and are rooted in years of corruption fully supported by the actions, improper practices of hiring, discrimination, and mismanagement by the Defendants.

26. The Plaintiffs state that the Defendant's actions will ultimately prove offenders have had continuous exposure to asbestos and asbestos-related materials, lead, lead filings, radium, gross alpha and rust particles in the drinking water and water supply, the arbitrary denial of acceptable standards of sanitary living conditions, the arbitrary denial of access to sanitary cleaning supplies to prevent the spread of disease and bacteria, the denial of proper medical care and attention to medical issues by staff, the alleged mismanagement of funds and taxpayer dollars meant for improvements to offender rehabilitative programs, educational resources, and legal library resources, violations associated with compliance of American with Disabilities Act ("ADA"), violations by staff who have been investigated for the misappropriation of state-funded food program resources (e.g. – food, prepared food, discarded food, etc.), and the arbitrary denial of the exhaustion of administrative remedies involving the Inmate Complaint Review System ("ICRS") by staff, all while the Plaintiffs have been confined to PDCI. Plaintiffs further allege that the Defendant's efforts to control the risk of exposure to said conditions are inadequate, rise to the level of "deliberate indifference," and are a threat to the best interests of public health and safety for the residents and families of the immediate surrounding community.

27. Pursuant to 42 U.S.C. § 1983, a state offender may bring an Eighth Amendment claim that environmental hazards in a prison, such as exposure to asbestos, pose an unreasonable risk of serious damage to future health. *Helling v. McKinney, 125 L. Ed. 2d 22, 113 S. Ct. 2475 (1993); Powell v. Lennon, 914 F.2d 1459 (11th Cir. 1990); Smith v. Fiedler, 867 F. Supp. 832 (E.D. Wis. 1994).*[4] Plaintiffs intend to demonstrate a deliberate indifference to the risk of serious damage to their

---

[2] See *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F. 2d 15, 17 (1st Cir. 1992).*
[3] *Knight v. Mills, 836 F. 2d 659 (1st Cir. 1987).*
[4] *Helling v. McKinney, 125 L. Ed. 2d 22, 113 S. Ct. 2475 (1993); Powell v. Lennon, 914 F.2d 1459 (11th Cir. 1990); Smith v. Fiedler, 867 F. Supp. 832 (E.D. Wis. 1994).*

personal future health, specifically due to exposure to unreasonable levels and amounts of asbestos[5]. *Helling v. McKinney, 113 S. Ct. at 2481-2482.*

28. Plaintiffs' allegations will comport to the standards demonstrating the deprivation was sufficiently serious (objective component) and that Defendants' actions were conduct acting with a sufficiently capable state of mind (subjective component). At the outset, the Plaintiffs seek to have the court note that pleadings and filings performed by *pro se* litigants are held to a less stringent standard than those drafted by an attorney or legal counsel[6]. *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).* This looser standard requires the court to be especially indulgent in accepting truth of the factual averments of the complaint and to consider every inference helpful to the Plaintiffs' cause[7]. *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F. 2d 15, 17 (1st Cir. 1992).* Accordingly, in ruling on these motions, the court is required to look to the allegations of the complaint, and, "…if under any theory they are sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied."[8] *Knight v. Mills, 836 F. 2d 659 (1st Cir. 1987).*

29. Plaintiffs' assertion that exposure to asbestos fibers causes cancer states a cognizable Eighth Amendment harm. A prison inmate may successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.[9] *Helling v. McKinney, 113 S. Ct. at 2480.* Plaintiffs further state that it would be odd for the court to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prisons on the ground that nothing had yet occurred or happened to the Plaintiffs overall health. Plaintiffs aver that a remedy for unsafe conditions need not await a tragic event.[10] Plaintiffs acknowledge that there are challenges in proving both the objective and subjective elements of this Eighth Amendment claim, however Plaintiffs seek to have the court give serious considerations as to whether Plaintiffs' allegations, if true, state a cognizable claim. On this limited issue, Plaintiffs must prevail in being granted injunctive relief and, despite technical deficiencies, the factual allegations within the complaint provide sound jurisdictional and legal grounds upon which Plaintiffs may proceed.

---

[5] *Helling v. McKinney, 113 S. Ct. at 2481-2482*
[6] *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).*
[7] *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F. 2d 15, 17 (1st Cir. 1992).*
[8] *Knight v. Mills, 836 F. 2d 659 (1st Cir. 1987).*
[9] *Helling v. McKinney, 113 S. Ct. at 2480.*
[10] The Eighth Amendment protects against future harm to inmates. The U.S. Supreme Court squarely rejected the proposition that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment. A Plaintiff satisfies the culpability requirement by proving that the Defendants' actions or omissions constituted "deliberate indifference;" this baseline standard applies in cases alleging inadequate protection from injury from other inmates or inhumane conditions that may deprive an inmate of a basic necessity of life, such as food, shelter, health or exercise.

30. Plaintiffs complain that the water and water being supplied to PDCI is contaminated, more specifically with known hazards caused by the presence of lead laterals known to carry radium, gross alpha, and rust that impact the Plaintiffs greatly. Plaintiffs further allege that the ultimate result of Defendant's actions is the daily risk of *poisoning*, and that the Defendants knowledge that the contaminated drinking water and water supply [lead] laterals places the Plaintiffs at risk for cancer and blindness but have taken no action. Plaintiffs aver that PDCI staff and employees are allowed to purchase and bring in their own bottled drinking water. Plaintiffs have filed grievances and discussed these concerns with PDCI medical staff, but to no avail. Plaintiffs further state that the infliction and reckless actions of the Defendants are deliberate in the criminal law sense, specifically meaning that the, "... Defendants have committed an act so dangerous that [Defendants] knowledge of the risk can be inferred or that the Defendants actually knew of an impending harm easily preventable[11]." *Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996).*

31. Plaintiffs argue that, over the past several years, attention has focused on the environmental health impacts that prisoners face, including, but not limited to, extreme heat (due to the malicious denial by prisons to retrofit buildings with air conditioning), contaminated water, and exposure to mold infestations. The Plaintiffs aver that the chronic presence of mold is frequently a component of what is referred to as "Tight Building Syndrome" or "Sick Building Syndrome" – terms that have been coined to describe a relatively new occupational health and safety problem for inmates and prisoners who work and spend excessive amounts of time indoors within prisons. This is not a new phenomenon; it has been a source of concern for governmental agencies and entities such as the Environmental Protections Agency (EPA) and the subject of numerous class-action lawsuits over the last several decades. According to the EPA, mold is one of the most common biological contaminants responsible for Sick Building Syndrome (SBS) or Building Related Illness (BRI), both caused in part by, "...contaminants that may breed stagnant water accumulated in ducts, humidifiers, and drain pans, or where water has collected on ceiling tiles, carpeting, or insulation." The EPA released a fact sheet as early as 1991 describing SBS as a way to, "...describe situations in which building occupants experience acute health and comfort effects which appear to be linked to time spent in prison or jail."

32. Plaintiffs argue that the Defendants knowingly have exposed inmates and prisoners with PDCI to "black mold" which is commonly known to exist within the institution setting. Plaintiffs aver that the Defendants: 1) owe a duty of care to the Plaintiffs; (2) the Defendants have breached that duty through a failure to exercise the degree of care a reasonable person would exercise in like circumstances; (3) the Plaintiffs have suffered injury as a result; and (4) the injury to the Plaintiffs was proximately caused by the Defendant's breach of duty of care. Plaintiffs will demonstrate that the Defendants actions of exposing inmates

---

[11] *Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996).*

and prisoners to mold within the institution have caused health issues similar to a 2014 report by the Institute of Medicine on mold exposure which found there was "...sufficient evidence to link indoor exposure to mold with upper respiratory tract symptoms, coughing, and wheezing in otherwise healthy [offenders]. The Center for Disease Control also indicated that common health concerns from mold exposure (within prisons) include, "...hay-fever like allergic symptoms, and individuals with chronic respiratory disease such as asthma may experience difficulty when breathing. Additionally, people with immune suppression may be at increased risk for infections."

33. Plaintiffs aver that Defendants actions constitute a blatant and malicious disregard to follow health initiatives established by agencies such as the EPA and CDC while exposing Plaintiffs and the offender population within PDCI to mold within its housing unit, bathrooms, shower facilities, education building, chapel and religious services facilities, servery and eating facilities, as well as off-site properties owned and maintained by PDCI and serviced through offender worker assignments. Recent federal rights lawsuits over conditions at prisons located in Oklahoma, West Virginia, Florida, California, New Mexico, Missouri, Louisiana, Georgia, and Pennsylvania have been filed regarding the unsafe conditions and exposure to mold which caused, "...ALL state prisoners to be removed from the Anthony Correctional Center in Sulphur Springs, West Virginia following an [emergency] inspection and report regarding the discovery of black mold at the facility." The Plaintiffs will demonstrate that the Defendants acknowledged the existence and presence of mold within the institution, yet claimed that an inspection was unnecessary after, "...telephonic discussions with a member of the Wisconsin Department of Health."

34. Plaintiffs aver that a clearly established right is one where, "...the contours of the right [are] sufficiently clear that a reasonable official would understand that what he/she is doing violates that right[12]." *Anderson, 483 U.S. at 640*. "Because there is an almost infinite variety of factual scenarios that may be brought into a court of law, a Plaintiff need not point to cases that are identical to the presently alleged constitutional violation[13]." *Denius v. Dunlap, 209 F.3d 944, 950 (7th Cir. 2000)*. The Plaintiffs state their constitutional rights are clearly established at the time the alleged violations occurred[14]. *Wilson, 526 U.S. at 609; Khuans v. School District, 110, 123 F.3d 1010, 1013 (7th Cir. 1997)*.

35. Plaintiffs maintain that the chief prison official, Defendant Haines, has known for the term of his years serving in the capacity as Warden of PDCI that the presence of asbestos in the prison and affecting the air quality of the institution as a whole was in violation of state health codes. Plaintiffs maintain that, on the merit of this complaint, this allegation is sufficient to satisfy the subjective component of the Eighth Amendment inquiry: did the official(s) act with a sufficiently culpable

---

[12] *Anderson, 483 U.S. at 640*.
[13] *Denius v. Dunlap, 209 F.3d 944, 950 (7th Cir. 2000)*.
[14] *Wilson, 526 U.S. at 609; Khuans v. School District, 110, 123 F.3d 1010, 1013 (7th Cir. 1997)*.

state of mind. The allegations that prison officials knew for years that unacceptable levels of asbestos fibers contaminated living, education, and eating facilities within the prison grounds, if true, would undoubtedly demonstrate a deliberate indifference to a serious health risk to inmates. With respect to prison health hazards, state health codes reflect established public attitudes as to what acceptable standards are[15]. *Good v. Commissioner of Correction, 417 Mass. 329, 335, 629 N.E. 2d 1321 (1994).* Courts have long held that, in determining what is to be considered cruel and unusual punishment, reference must be made to the evolving standards of decency that mark the progress of society[16]. *Trop v. Dulles, 356 U.S. 86, 101, 2 L. Ed. 630, 78 S. Ct. 590 (1958).* Plaintiffs aver that seeking injunctive relief adequately supports the claim that Defendants' actions are sufficiently serious to constitute an Eighth Amendment violation[17]. *See DesRosiers v. Moran, 949 F. 2d 15, 18 (1st Cir. 1991).*

36. Plaintiffs maintain that appropriate standards of medical care and medical treatment(s) have been arbitrarily denied by Health Services Unit ("HSU") staff. Additionally, Plaintiffs state that a main, and critically important, component of violations related to staff interactions with offenders are in direct violation Wisconsin's Health Information and Patient Portability Act ("HIPPA"). The strongest precedent in the Supreme Court for recognizing a constitutional right to conceal one's medical history is found in *Whalen v. Roe*[18]. The Plaintiffs hold that a Correctional Officer is not qualified to handle, disburse, and distribute medications of any sort and that the practice of doing so violates constitutionally protected rights that require prison officials to provide [a] medical staff that is "competent to examine prisoners and diagnose illnesses; it must be able to treat medical problems or to refer prisoners to others who can."[19] The rendering of medical services by unqualified personnel is deliberate indifference,[20] as is the failure to provide access to specialist care that a particular prisoner's condition may require. In this instance Plaintiffs affirmatively state that the Defendants knew that the institution must provide enough medical staff coverage to meet the needs of the population, yet have failed to do so reflective of a continual, grossly negligent, and lengthy span of time basis. "Staff that are untrained or too few in numbers may contribute to an Eighth Amendment violation."[21]

37. As courts do in a variety of legal contexts that involve intricate and subtle questions of causation, the court may examine the question of segregative effect inferentially. The Supreme Court's approach in employment discrimination cases provides perhaps the most familiar analogy. *See, e.g., St. Mary's Honor Ctr. v. Hicks, 509, U.S. 502, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Texas*

---

[15] *Good v. Commissioner of Correction, 417 Mass. 329, 335, 629 N.E. 2d 1321 (1994).*
[16] *Trop v. Dulles, 356 U.S. 86, 101, 2 L. Ed. 630, 78 S. Ct. 590 (1958).*
[17] See *DesRosiers v. Moran, 949 F. 2d 15, 18 (1st Cir. 1991).*
[18] See *Whalen v. Roe, 429 U.S. 589, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977).*
[19] See *Coleman v. Wilson, 912 F. Supp. 1282, 1307 (E.D. Cal 1995); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).*
[20] See *Petrichko v. Kurtz, 117 F. Supp. 2d 467, 471, (E.D. Pa. 2000).*
[21] See *King v. Frank, 328 F. Supp. 2d 940, 947-48 (W.D. Wis. 2004).*

<blockquote>
<em>Department of Community Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 207, 101 S. Ct. 1089 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).</em> [Statistical] disparities in hiring data may justify an inference of discrimination because "absent explanation, it is ordinarily expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population from which employees are hired." <em>Hazelwood Sch. District v. United States, 433 U.S. 299, 307, 53 L. Ed. 2d 768, 97 S. Ct. 2736 (1977). (citations and internal quotation marks omitted).</em> A <em>prima facie</em> showing of discriminatory employment practice "raises an inference of discrimination… because we presume those acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." <em>United States v. Yonkers Bd. of Educ., 123 F. Supp. 2d 694</em> discriminatory hiring practices by department of corrections in prisons.
</blockquote>

38. Plaintiffs state that prison officials have acted with deliberate indifference to medical, dental, and mental health care provided to inmates in direct violation of the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, Title II of the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act. The Plaintiffs intend to succeed on a "systems" Eighth Amendment claim by showing either (1) that there are such systemic and gross deficiencies in staffing, facilities, equipment, and/or procedures that the inmate population is effectively denied access to adequate medical care; or (2) repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff evincing an excessive risk of serious harm. Systemic and long standing inadequacies create such a high risk of future injury that deliberate indifference must be inferred.

39. Plaintiffs aver that the Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.[22] Plaintiffs intend to show that (1) they are similarly situated to members of the unprotected class; (2) they are treated differently from members of the unprotected class; and (3) the Defendants act[ed] with discriminatory intent. Discriminatory intent can be shown by either direct or circumstantial evidence. Direct evidence is evidence which, of believed by the trier of fact, will prove discrimination without inference or presumption. Circumstantial evidence is evidence which allows the trier of fact to infer intentional discrimination. All that is required of the Plaintiffs therefore is that the actions or lack of action, taken by the Defendants be motivated without the requirements of showing hatred, animus, and/or dislike.

40. Plaintiffs aver that the Defendants have engaged in violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act, both of which apply to prisoners. Title II of the ADA was modeled after § 504 of the Rehabilitation Act. The elements of these claims are nearly identical, and precedent under one statute typically applies to the other. The elements of a claim under Title II of the ADA

---

[22] See <em>U.S. Const. amend. XIV, 1.</em>

are: (1) Plaintiffs are qualified individuals with disabilities; (2) Plaintiffs were either excluded from participating in, or denied the benefits of, a public entity's services, programs, or activities, or were otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability.[23] Intentional discrimination, or discrimination "by reason of disability," can be established by evidence that the Defendants intentionally acted on the basis of the disability, the Defendants refused to provide a reasonable modification, or that the Defendant's rule disproportionately impacts disabled people.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

41. Plaintiff, Nicasio Cuevas Quiles, III, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Nicasio Cuevas Quiles, III presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Nicasio Cuevas Quiles, III has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies[24].

42. Plaintiff, Scott Andrastek, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Scott Andrastek presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Scott Andrastek has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

43. Plaintiff, Carlos Abadia, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Carlos Abadia presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Carlos Abadia has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

44. Plaintiff, Plaintiff, Raymond Cody, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Raymond Cody presented the facts relating to this complaint and has yet to receive satisfactory responses stating

---

[23] See 42 U.S.C.S. §12132.
[24] The federal PLRA, 1995 Pub. L. No. 104-134, 110 Stat. 1321, does not mandate dismissal for failure to exhaust administrative remedies, at least not at the prefatory stages of litigation. See Casanova v. Dubois, 304 F.3d 75 (1st Cir. Ct. App. (2002)); Rodney v. Goord, 2003 U.S. Dist..

that the grievance(s) had been denied. As of the date of this complaint Plaintiff Raymond Cody has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

45. Plaintiff, Terence Brewer, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Terence Brewer presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Terence Brewer has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

46. Plaintiff, Steven Jiles, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Steven Jiles presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Steven Jiles has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

47. Plaintiff, Anthony Stenson, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Anthony Stenson presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Anthony Stenson has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

48. Plaintiff, Thomas Hill, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Thomas Hill presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Thomas Hill has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

49. Plaintiff, Charles Hennings, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Charles Hennings presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Charles Hennings has appealed the denial of any grievance(s) submitted and is

awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

50. Plaintiff, Sean Hatch, is using the prisoner grievance procedure available at Prairie Du Chien Correctional Institution to attempt to resolve the issues associated within this complaint. Plaintiff Sean Hatch presented the facts relating to this complaint and has yet to receive satisfactory responses stating that the grievance(s) had been denied. As of the date of this complaint Plaintiff Sean Hatch has appealed the denial of any grievance(s) submitted and is awaiting a response in satisfaction of the exhaustion of Plaintiffs' administrative remedies.

## V. LEGAL CLAIMS

51. Plaintiffs reallege and incorporate by reference paragraphs 1-50.

52. The Plaintiffs have no plain, adequate, or complete remedies at law to redress the wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which Plaintiffs seek.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this court enter judgment granting Plaintiffs:

53. Granting Plaintiffs a declaration that the acts and omissions described herein violate their rights under the Constitution and laws of the United States, and;

54. A preliminary and permanent injunction ordering Defendants to cease their acts of violations against Plaintiffs be issued immediately, and;

55. To issue an order to immediately transfer each Plaintiff to a **minimum security facility** within the Wisconsin Department of Corrections and out of Prairie Du Chien Correctional Institution, and;

56. To issue an order for an immediate emergency investigation and subsequent testing of all buildings by the Wisconsin Department of Health, the Environmental Protections Agency (EPA), and the Center for Disease Control (CDC) including, but not limited to: (1) Building "A"; (2) Building "B"; (3) Building "C"; (4) Building "D"; (5) Building "E"; (6) Building "F" a/k/a "South Housing Building"; (7) Building "G" a/k/a "Segregation/River Building"; (8) Building "H" a/k/a "Education, Health Services, and Religious Services Building"; (9) Building "I" a/k/a "Servery, Food Services, and Visitation Building"; and (10) Building "J" for the presence of asbestos, asbestos-related materials, asbestos fibers, lead laterals, lead levels of both drinking and general

use water supplied to each building within PDCI, and mold, more specifically the species of mold commonly known as "black mold" a/k/a *"stachybotrys chartarum"* and/or *"stachybotrys chlorohalanata,"* and;

57. To issue an order for the evacuation/removal of all offenders and staff currently being housed and/or working at PDCI during the commission of the emergency investigation and subsequent testing of all buildings in the best interests of public health, social responsibility, and justice, and;

58. To issue an order granting Plaintiffs a fully independent, private third-party audit of all financial records associated with and maintained by the business department of PDCI for all departments, more specifically any financial records in which any of the Defendants have had oversight and/or management of during their respective tenures and in their official capacities respectively and/or collectively, and;

59. To issue an order granting Plaintiffs a fully independent, private third-party audit of all property and inspection reports associated with the remediation and/or work performed at PDCI including, but not limited to, reports and certifications held by staff for the purposes of work performed in the day-to-day operations involving the removal, treatment, and remediation of asbestos, asbestos-related materials, mold, "black mold" concerns, air quality concerns, and the overall health conditions of PDCI, and;

60. Granting Plaintiffs nominal damages in the amount of $1.00 and compensatory damages in the amount of $750,000.00 against each Defendant, jointly and severally.

61. Plaintiff Nicasio Cuevas Quiles, III seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

62. Plaintiff Carlos Abadia seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

63. Plaintiff Scott Andrastek seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

64. Plaintiff Raymond Cody seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

65. Plaintiff Terence Brewer seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

66. Plaintiff Steven Jiles seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

67. Plaintiff Anthony Stenson seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

68. Plaintiff Thomas Hill seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

69. Plaintiff Charles Hennings seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

70. Plaintiff Sean Hatch seeks additional compensatory damages of $250,000.00 against Defendant Tim Haines only.

71. Plaintiff Nicasio Cuevas Quiles, III seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

72. Plaintiff Carlos Abadia seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

73. Plaintiff Scott Andrastek seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

74. Plaintiff Raymond Cody seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

75. Plaintiff Terence Brewer seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

76. Plaintiff Steven Jiles seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

77. Plaintiff Anthony Stenson seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

78. Plaintiff Thomas Hill seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

79. Plaintiff Charles Hennings seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

80. Plaintiff Sean Hatch seeks additional compensatory damages of $250,000.00 against Defendant Kevin Semanko only.

81. All Plaintiffs seek punitive damages in the amount of $1,000,000.00. All Plaintiffs seek these damages against each Defendant, jointly and severally.

82. Plaintiffs also seek a jury trial on all issues triable by jury.

83. Plaintiffs also seek recovery of their costs in this suit, and

84. Any additional relief this court deems just, proper, and equitable.

Dated this 23rd day of July, 2019.

Respectfully,

_____
Nicasio Cuevas Quiles, III

_____
Scott Andrastek

_____
Carlos Abadia

_____
Raymond Cody

_____
Terence Brewer

_____
Steven Jiles

_____
Anthony Stenson

_____
Thomas Hill

_____
Charles E. Hennings

_____
Sean Hatch

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Prairie Du Chien, Wisconsin on July 22, 2019

_____
Nicasio Cuevas Quiles, III

_____
Scott Andrastek

_____
Carlos Abadia

_____
Raymond Cody

_____
Terence Brewer

_____
Steven Jiles

_____
Anthony Stenson

_____
Thomas Hill

_____
Charles E. Hennings

_____
Sean Hatch