IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICASIO CUEVAS QUILES, III,
SCOTT ANDRASTEK, CARLOS ABADIA,
RAYMOND CODY, TERENCE BREWER,
STEVEN JILES, ANTHONY STENSON,
THOMAS HILL, CHARLES E. HENNINGS
and SEAN HATCH

                     Plaintiffs,                OPINION AND ORDER

   v.

                                                             19-cv-585-wmc

TIM HAINES, RUSSELL BAUSCH, LISA
PETTERA, JOHN DOE I, JOHN DOE II,
JOHN DOE III, MS. KRACHEY, MS. BARTELS,
MS. JAIME SALINAS and JOHN DOE IV

                     Defendants.

---

     *Pro se* plaintiffs Nicasio Cuevas Quiles, III, Scott Andrastek, Carlos Abadia, Raymond Cody, Terence Brewer, Steven Jiles, Anthony Stenson, Thomas Hill, Charles E. Hennings and Sean Hatch are or were incarcerated at Prairie Du Chien Correctional Institution ("PDCI"), and allege in this lawsuit an array of claims against various PDCI employees. Because plaintiffs are prisoners seeking redress from "officer[s] or employee[s] of a governmental entity," the court is required to screen their complaint. *See* 28 U.S.C. § 1915A. Since plaintiffs' complaint fails to satisfy the pleading requirements of Rules 20 and 8 of the Federal Rules of Civil Procedure, at least as currently written, the court must dismiss the complaint *without prejudice*, giving plaintiffs the opportunity to file an amended complaint that corrects the deficiencies described below.

Plaintiffs have also filed a motion for a preliminary injunction and temporary restraining order. Because their motion is both procedurally and substantively deficient, the court must deny that motion without prejudice as well.

Finally, since multiple plaintiffs appear to be proceeding on separate, unique issues, the court provides specific instructions about how to submit any proposed, amended complaint and other filings that comply with the Federal Rules of Civil Procedure.

SUMMARY OF ALLEGATIONS[1]

A. **Defendants**

Plaintiffs name eleven defendants, all of whom were allegedly employed at all relevant times by the Wisconsin Department of Corrections at PDCI. The plaintiffs list seven named defendants: Tim Haines, former Warden; Kevin Semanko, Deputy Warden; Russel Bausch, Security Director; Lisa Pettera, Program Director and ADA Supervisor; Ms. Krachey, Unit Manager; Ms. Bartels, Health Services Unit Manager; and Jaime Salinas, Health Services Nurse. Additionally, plaintiffs have named four "John Doe" defendants.

B. **Conditions of Confinement**

Plaintiffs' main concerns appear to be about the conditions of their confinement at PDCI. Specifically, they allege that: they have been exposed to asbestos, lead, radium and black mold; the water supply is contaminated with lead and gross alpha and rust particles; and they have been deprived of sanitary living conditions and access to cleaning supplies

---

[1] As with any *pro se* litigant's complaint, the court must read plaintiffs' allegations generously, resolving any ambiguities and reasonable inferences in their favor. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

to prevent the spread of disease and bacteria. Plaintiffs also assert generally that defendants' "efforts to control the risk of exposure to said conditions are inadequate." (Compl. (dkt. #1) ¶ 26.)

Plaintiffs assert that exposure to asbestos causes cancer and generally poses an unreasonable risk of serious damage to their future health. More specifically, they allege that defendant Tim Haines, PDCI's former warden, knew for years that asbestos was in the prison and affected the prison's air quality, and also that the prison was in violation of state health codes.

With regards to the water at PDCI, plaintiffs claim that the lead laterals contaminate the water supply with lead, radium, gross alpha particles, and rust. These contaminants allegedly create a daily risk of poisoning and put them at risk for cancer and blindness. Plaintiffs further allege that "defendants" have knowledge of the lead laterals and contaminated water supply. Plaintiffs have filed grievances and discussed their concerns with "PDCI medical staff," but to no avail. Finally, plaintiffs note that PDCI employees are allowed to bring in their own bottled drinking water.

Plaintiffs also claim that "[d]efendants knowingly have exposed inmates and prisoners with[in] PDCI to 'black mold.'" (Compl. (dkt. #1) ¶ 32.) They assert that "[d]efendants' actions of exposing inmates and prisoners to mold within the institution have caused health issues similar to a 2014 report by the Institute of Medicine on mold exposure." (*Id.*) They reference a number of sources to explain the harmful effects of mold exposure and claim that, by exposing plaintiffs' to mold, defendants have failed to "follow health initiatives established by agencies such as the EPA and CDC." (*Id.* ¶ 33.) Finally,

3

they claim that defendants acknowledged the presence of mold within PDCI yet said that an inspection was not necessary after telephonic discussions with the Wisconsin Department of Health.

### C. Medical Care

Plaintiffs additionally claim that they have been denied proper medical care. They assert that defendants have failed to provide enough medical staff to meet the needs of the population at PDCI. Plaintiffs also seem to express concern over the privacy of their medical records and the handling of medications by correctional officers, but again do so in only abstract terms and do not recount any particular instances in which the alleged violations occurred.

### D. Other Concerns

Plaintiffs also list a number of other concerns that they have in the broadest of strokes, including the mismanagement of funds, arbitrary denial of the exhaustion of administrative remedies, corruption, employment discrimination and violations of the Americans with Disability Act and Rehabilitation Act.

OPINION

It is clear from plaintiffs' complaint that they have spent time researching the law and other literature in preparing their claims. However, to proceed past screening plaintiffs must do more than allege the general elements of their myriad legal claims. In particular, as explained in greater depth below, plaintiffs' complaint must comply with Rules 20 and

8 of the Federal Rules of Civil Procedure. Having failed to do so, plaintiffs may proceed no further.

**I. Rule 20**

The Federal Rules of Procedure puts limits on the kinds of defendants and claims that can be joined together in a single lawsuit. *See, e.g.*, Fed. R. Civ. P. 18, 20 and 21. Under the Rules, unrelated claims against different defendants must be brought in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Specifically, Rule 20 "prohibits a plaintiff from joining many defendants in a single action unless the plaintiff asserts at least one claim to relief against each defendant that both arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all." *Padilla v. Grams*, No. 11-cv-89-bbc, 2011 WL 1660581, at *2 (W.D. Wis. May 3, 2011). If a complaint includes unrelated claims against different defendants in violation of Rule 20, a court may order that the lawsuit be severed -- in other words, the court may order that the lawsuit be broken up into multiple, distinct lawsuits. *See Lee v. Cook Cty., Illinois*, 635 F.3d 969, 971 (7th Cir. 2011). Additionally, the court has authority under Rule 21 and its inherent authority to sever a lawsuit when it would be unwieldy to allow a plaintiff to maintain so many claims against so many different defendants in a single case. *Lee*, 635 F.3d at 971; *In re High Fructose Corn Syrup Antitrust Litigation,* 361 F.3d at 441.

Plaintiffs' complaint contains multiple unrelated claims against different defendants -- or even if related, the claims are simply too unwieldy to decide efficiently in one case.

Plaintiffs' claims may be grouped into at least three different categories, each of which belongs in a separate lawsuit:

**Lawsuit 1:** Unlawful conditions of confinement.
**Lawsuit 2:** Inadequate medical care.
**Lawsuit 3:** Employment discrimination and other allegations of discrimination.

While plaintiffs may proceed on *one* group of claims identified above under the current case number, they must decide which group of claims will proceed under the current case number and whether they wish to proceed with any other group of claims in separate lawsuits. If plaintiffs decide to proceed on multiple groups of claims, they will be required to pay a separate filing fee for each additional lawsuit. Regardless, plaintiffs must submit a new complaint (or complaints) that clarifies on which of the claims they are proceedings *and* provide greater detail as discussed in the section below on Rule 8.

Further, plaintiffs should be aware that the Federal Rules of Civil Procedure limits the circumstances in which multiple *plaintiffs* may be joined in a single action. Specifically, Rule 20(a)(1) provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). In other words, in order for plaintiffs to proceed together in a joint lawsuit (rather than each individual plaintiff proceeding in his or her own lawsuit) the alleged claims must "arise out of a common set of facts or raise questions of law or fact that are common to both of them." *Padilla*, No. 11-cv-89-bbc, 2011 WL 166058, at *3. Perhaps

some of plaintiffs claims might meet that requirement, but there are insufficient allegations of a common set of facts or law to proceed on the current complaint.

**II. Rule 8**

In addition, plaintiffs' complaint does not currently comply with Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8, a complaint must contain enough allegations of *fact* to support plaintiffs' claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Although plaintiffs state numerous legal conclusions, many are supported by no allegations of fact or nearly none. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. For example, in paragraph 36, plaintiffs write that "appropriate standards of medical care and medical treatment(s) have been arbitrarily denied by Health Services Unit (HSU) staff." (Compl. (dkt. #1) ¶ 36.) However, plaintiffs did not recount any specific instances where medical care was denied, nor do they identify which plaintiff(s) were denied care and by whom.

Rule 8 also requires a complaint to provide notice to defendants of what plaintiffs believe they did to violate their rights. *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 775 (7th Cir. 1994). Plaintiffs' complaint simply does not do so. Instead, their allegations refer multiple times to "defendants' actions" without specifically describing what actions were taken and by which defendants. (*See, e.g.,* Compl. (dkt. #1) ¶¶ 26, 28, 30 & 32.) In their amended complaint, plaintiffs should do their best to identify the specific actions by individual defendants that plaintiffs believe violated their rights.

7

Similarly, because the complaint involves multiple alleged victims, plaintiffs must be clear about *who* among them is bringing what claims and has suffered what injury. For example, in paragraph 40, plaintiffs allege violations of the Americans with Disabilities Act; they even acknowledge that one of the required elements of such a claim is that the plaintiff has a disability; but they do *not* state which plaintiff(s) are disabled, much less *what* disability each plaintiff has. (Compl. (dkt. #1) ¶ 40.)

**III. Right to Amend**

If they choose to attempt to correct the glaring deficiencies in the current complaint, plaintiffs (or more likely, certain plaintiffs) should draft an amended complaint as if they were telling a story to someone who knows nothing about the events at hand. This means that they should explain: (1) what happened, specifically, to make them believe they have a legal claim; (2) when it happened; (3) where it happened; (4) who did it; (5) why; and (6) how the court can assist them in relation to those events. Plaintiffs should also take special care to identify the *specific* actions taken by each, individual defendant that they believe violated their rights.

The court further urges plaintiffs to focus on laying out the allegations in a chronological fashion, rather than merely making legal arguments. That being said, plaintiffs' legal research can be helpful in informing them as to what facts are relevant to their claims. Plaintiffs should try to allege specific facts related to each element of their legal claim or claims. The court is sympathetic to the fact that plaintiffs may not have access to all the facts relating to their case at this point. Plaintiffs' complaint need not provide "detailed factual allegations" to meet the requirements of Rule 8, but again

8

plaintiffs must do more than recite the elements of a cause of action. *Twombly,* 550 U.S. at 555.

**IV. Motion for Preliminary Injunction and TRO**

In addition to their complaint, plaintiffs filed a motion for a temporary restraining order and preliminary injunction, (Mot. for Prelim. Inj. & TRO (dkt. #5)) which they formatted as a proposed order from the court, seeking wide-ranging remedies, including the emergency transfer of plaintiffs to a minimum security correctional facility, an emergency inspection of the building for the alleged toxic materials, a financial audit of PDCI, and much more.

As an initial matter, plaintiffs have not complied with this court's procedure for obtaining preliminary injunctive relief, a copy of which will be provided to them with this order. Under these procedures, a plaintiff must file and serve proposed findings of fact that support his claims, along with any evidence that supports those proposed findings. Plaintiffs have neither submitted proposed findings of fact nor cited any evidence to support those findings.

Even if plaintiffs' motion were not procedurally deficient, both the temporary restraining order and the preliminary injunction would almost certainly be denied on the merits at this time. A temporary restraining order is only available when the "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Only in rare situations will a court issue a temporary restraining order to change, rather than preserve, the status quo. *See Granny*

*Goose Foods, Inc. v. Bhd of Teamsters*, 415 U.S. 423, 439 (1974) (a temporary restraining order "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing"); *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1979) (while "there may be situations justifying a mandatory temporary injunction compelling the defendant to take affirmative action, . . . mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued").

Here, plaintiffs ask the court to order defendants to undertake a number of affirmative actions, such as transferring plaintiffs to another facility and ordering an audit of PDCI. Yet they allege only minimal facts; and certainly not enough to "clearly show" that "immediate and irreparable injury" will result or to meet the high bar required for the court to order defendants to order a change to the status quo.

To prevail on a motion for a preliminary injunction, the movant must show: (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted. *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007). As discussed above, plaintiffs have not alleged sufficient facts to even meet the low requirements of Rule 8; it follows that they have not shown a likelihood of success on the merits of their case factually, nor provided actual evidence.

## V. Rule 11

Under Rule 11(a) of the Federal Rules of Civil Procedures, each plaintiff must sign every pleading, written motion and other paper submitted on his or her behalf. Fed. R. Civ. P. 11(a). Although all plaintiffs have now signed the complaint and motion for

preliminary injunction and TRO, the court has also received multiple supplemental letters that purport to be on behalf of "plaintiffs" but are signed by only one plaintiff. (Dkts. ## 11, 12, 14, 15, 16 & 17.) As none of the plaintiffs have identified themselves as an attorney of record, they may not submit documents on behalf of other plaintiffs unless they have been reviewed and signed by all of them. The court will not consider documents submitted that do not comply with Rule 11(a).

Additionally, each plaintiff should be aware of risks and responsibilities attendant to joint litigation. When a party signs a paper submitted to the court (as required by Rule 11(a)), he or she is making certain representations to the court as to the accuracy and purpose of the paper under Rule 11(b) and he or she may be sanctioned for any paper filed over his name under Rule 11(c). Fed. R. Civ. P. 11. The court provides this information not to deter plaintiffs from pursuing joint litigation, but rather simply to make sure that they are aware of the potential countervailing costs of litigating as a group rather than individually and accept the personal responsibility of assuring that each fact is alleged in good faith. *See Boriboune v. Berge*, 391 F.3d 852, 854 (7th Cir. 2004) ("District judges may think it sound to alert prisoners to . . . the risk under Rule 11 . . . that they will be held accountable for their co-plaintiffs' claims.").

ORDER

IT IS ORDERED that:

1) Plaintiffs' complaint (dkt. #1) is DISMISSED without prejudice for failure to comply with Federal Rule of Civil Procedure 20 and 8.

2) Plaintiffs may have until **October 29, 2019**, to inform the court which lawsuit they would like to proceed with under this case number.

3) For any lawsuit plaintiffs dismiss voluntarily, they will not owe a filing fee and they will be permitted to refile the dismissed claims at a later date, provided that they comply with the applicable statute of limitations.

4) For any additional lawsuit plaintiffs choose to pursue, they will owe a separate filing fee.

5) Plaintiffs may have until **October 29, 2019**, to file an amended complaint for each lawsuit they wish to pursue.

6) Provided plaintiffs choose to file an amended complaint(s), the court will screen the claims to determine whether they state a claim upon which relief may be granted. If plaintiffs fail to respond to this order by **October 29, 2019,** the court will dismiss their claims without prejudice for failure to prosecute.

7) Provided plaintiffs continue to litigate as a group, all plaintiffs are instructed to review and sign every pleading, written motion and other paper submitted on his or her behalf in compliance with Rule 11(a) of the Federal Rules of Civil Procedure.

8) Plaintiffs' motion for a preliminary injunction and TRO is DENIED without prejudice.

Entered this 8th day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge